UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN G. HUMPHREY,<br><br>    Plaintiff,<br><br>        v.<br><br>UNITED ASSOCIATION OF PLUMBERS AND<br>PIPEFITTERS UNION, LOCAL 101, *et al.*,<br><br>    Defendants. | Case No. 11-cv-716-JPG-SCW |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion for summary judgment filed by defendant United Association of Plumbers and Pipefitters Union, Local 101 ("Local 101") (Doc. 30). Local 101 asks the Court to grant it summary judgment on plaintiff John G. Humphrey's claims under the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 (1) that Local 101 discriminated against him on the basis of age, race and sex and (2) retaliated against him for complaining about discrimination and filing a charge with the Equal Employment Opportunity Commission ("EEOC"). Humphrey has responded with a "Motion for Denying" Local 101's motion in which he asks that summary judgment be granted in his favor (Doc. 34). As pointed out in Local 101's motion to strike (Doc. 38), Humphrey's motion was beyond the August 23, 2012, dispositive motion deadline. The Court will therefore grant Local 101's motion to strike Humphrey's filing as a motion but will consider the filing, along with Humphrey's other filings (Docs. 35-37), as a response to Local 101's summary judgment motion.

**I.    Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211

F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. If the moving party is defending the claim at trial, he need not provide evidence affirmatively negating the plaintiff's claim. It is enough that he point to the absence of evidence to support an essential element of the plaintiff's claim for which he carries the burden of proof at trial *Celotex*, 477 U.S. at 322-23, 325. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). Where the defendant has pointed to a lack of evidence for one of the essential elements of a plaintiff's claim, if the plaintiff fails to provide evidence sufficient to establish that element, there is no genuine issue of material fact. *Celotex*, 477 U.S. at 322-23.

**II.    Facts**

Viewed in the light most favorable to Humphrey, the evidence and the reasonable inferences that can be drawn therefrom establishes the following relevant facts.

Humphrey, a white male born in May 1957, has been a member of Local 101 since July 2003. Beginning in 2008, Local 101 referred Humphrey to jobs for contractor employers.

Beginning in March 2009, Humphrey began working for Bechtel, a contractor, after being referred by Local 101. Later, he became dissatisfied with some of the decisions at the Bechtel worksite. Specifically, Bechtel named him to the position of craft safety steward for a few days in

March 2010, then took the position away from him and replaced him with someone more qualified. The replacement was also a white male and was about the same age as Humphrey, who was 52 at the time. Humphrey believes Bill Adrian, Local 101's business manager at the time, and Kevin Lilley, the general foreman, had input into the decision because they met with Bechtel about filling the position approximately a month before Bechtel selected the craft safety steward and later told Humphrey he would never be selected for that position. Humphrey believes Adrian held some personal animus against Humphrey because a company Humphrey used to own had discharged a debt to Local 101's fringe benefit fund in a bankruptcy proceeding and because Humphrey himself owed a large sum of money to a business owned by a friend of Adrian's. Humphrey also believes that Local 101's union steward called Bechtel and said Humphrey was a troublemaker and that that call was why he was removed from the craft safety steward position.

Humphrey is also upset because, in September 2010, he was not chosen to serve on Bechtel's emergency response team. He suspects Lilley played a role in that decision. Also, although he had served satisfactorily as a temporary foreman at least twice before, beginning in the late summer or fall of 2010, Humphrey was not permitted to serve as a foreman on the Bechtel job, and an employee who had allowed him to serve as a temporary foreman was demoted for doing so. Other white males in their forties and fifties served as foremen. In October 2010, Humphrey reported to Local 101 that he believed his work environment was hostile, but he did not report that it was on account of his age, race or sex. In fact, Humphrey never told Local 101 he believed he was being discriminated against in any way because of his age, race or sex. Local 101 did nothing in response to Humphrey's complaint.

Humphrey's employment with Bechtel was not without other problems. In September 2010, Humphrey was accused of inappropriately touching a coworker, and in October or November 2010, Bechtel suspected him of clocking out for a coworker.

On November 22, 2010, Bechtel laid Humphrey off along with an apprentice and twenty-five pipefitters from another union. A few weeks later, Humphrey asked Local 101 to refer him to Bechtel

again, but the Union informed him that Bechtel would not rehire him because of the aforementioned two problems and because he did not get along with his coworkers. Local 101 continued to refer Humphrey to other jobs out of the area, as Humphrey had requested. It did not refer him one local job he sought.

In February 2011, Humphrey filed a charge with the EEOC, and in May 2011, he received a right to sue letter. In August 2011, Humphrey filed this lawsuit alleging age, race and sex discrimination in violation of the ADEA, 29 U.S.C. §§ 623(a) & 631(a), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and retaliation for complaining of that discrimination and for filing an EEOC charge, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a).

Local 101 asks the Court for summary judgment because Humphrey can present no evidence of discrimination based on age, race or sex or of retaliation. Humphrey's response contains telling admissions. In his response to Local l01's statement of undisputed fact, he agrees to Local 101's statements, "Plaintiff admits that he does not have any facts to support his claim of age, sex or race discrimination," "At no time has defendant Local 101 discriminated against plaintiff on the basis of age, sex, or race," and, "Defendant Local 101 has not taken any action to retaliate against plaintiff for filing his EEOC charge or this lawsuit." (Doc. 32, ¶¶ 19, 41 & 42; Doc. 37, ¶¶ 19, 41 & 42). While the Court wonders what is left in dispute after these admissions in Humphrey's response, it will go through the legal requirements for summary judgment as a matter of form.

**III.    Analysis**

    A.    <u>Discrimination</u>

Title VII prohibits a labor organization from discriminating on the basis of race or sex:

It shall be an unlawful employment practice for a labor organization –
    (1) to . . . discriminate against . . . any individual because of his race [or] sex. . .;

    (2) to limit, segregate, or classify its membership or applicants for membership, or to

4

>classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race [or] sex . . . ; or
>
>(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e-2(c). The discrimination prohibited by Title VII includes harassment that creates a hostile environment. *See Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004). Similarly, the ADEA prohibits labor organizations from discriminating against individuals who are at least forty years old based on the individuals' age. 29 U.S.C. §§ 623(c) & 631(a).

To withstand a motion for summary judgment, an ADEA or Title VII plaintiff may present direct proof of discrimination through direct or circumstantial evidence. *Phelan v. Cook Cnty.*, 463 F.3d 773, 779 (7th Cir. 2006) (Title VII); *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 501 (7th Cir. 2010) (ADEA). In an ADEA case, the plaintiff must show that the plaintiff's age was the "but for" cause of the challenged action. *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 176-77 (2009). A plaintiff may also proceed using the indirect burden shifting mechanism outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Phelan*, 463 F.3d at 779; *Van Antwerp v. City of Peoria, Ill.,* 627 F.3d 295, 297-98 (7th Cir. 2010) (ADEA); *but see Kodish*, 604 F.3d at 501 (questioning whether in ADEA cases the *McDonnell Douglas* burden-shifting analysis survives *Gross*).

Under the direct method, the plaintiff must simply present evidence from which a reasonable trier of fact could reasonably infer that the defendant acted because the plaintiff was a member of a protected class. *Phelan*, 463 F.3d at 780. Humphrey has pointed to no such evidence. While he may be able to show that Local 101 and its officials did not like him, there is absolutely no direct or circumstantial evidence tying that animus to his age, race or sex. Therefore, he must proceed under

the *McDonnell Douglas* approach.

Under this approach, a Title VII plaintiff suing a labor organization must first establish a *prima facie* case of discrimination "by introducing evidence that the member 'was singled out and treated less favorably than others similarly situated on account of race or any other criterion impermissible under the statute.'" *Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 882-83 (2007) (Title VII) (quoting *Gay v. Waiters' & Dairy Lunchmen's Union,* 694 F.2d 531, 537 (9th Cir. 1982)); *see Wade v. Lerner New York, Inc.*, 243 F.3d 319, 322 (7th Cir. 2001) (ADEA).

A plaintiff's successful demonstration of his *prima facie* case creates a rebuttable presumption of discrimination. *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003); *Wade*, 243 F.3d at 322. The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007); *Wade*, 243 F.3d at 322. If the defendant is able to provide evidence of such a reason, the burden shifts back to the plaintiff to show that the articulated reason is actually a pretext. *Boumehdi*, 489 F.3d at 790; *Wade*, 243 F.3d at 322. At the pretext stage, the plaintiff must provide evidence that the employer's stated reason for the adverse action is dishonest *and* that the true reason for the action was discriminatory intent. *McGowan v. Deere & Co.*, 581 F.3d 575, 581 (7th Cir. 2009); *Hobbs v. City of Chicago*, 573 F.3d 454, 462 (7th Cir. 2009); *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir.2007). "[H]e ultimately must be able to point to some circumstances from which an inference can be drawn that the real reason for the employment action was discriminatory." *McGowan*, 581 F.3d at 581; *Perez*, 488 F.3d at 778. The ultimate burden of persuasion remains at all times with the plaintiff. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Humphrey's discrimination claims cannot withstand summary judgment using the indirect method for a number of reasons. There is simply no evidence that any similarly situated employee or union member of a different race, of a different sex or of a substantially younger age was treated more

favorably than Humphrey was. Humphrey points to one African-American man who on one occasion was allowed by Lilley, the foreman, to work a shift when Humphrey and others were sent home, but he concedes the African-American co-worker was allowed to work because he asserted himself and not because of his race. Because Humphrey did not assert himself as the African-American worker did, they are not similarly situated. Humphrey also points to one younger apprentice – how much younger is not reflected in the record – who was given the job of foreman instead of Humphrey, a higher-ranking journeyman. However, Humphrey has not shown the man was substantially younger and believes the younger man was given the job not because of his age but because of animus toward Humphrey.

As for the failure of Local 101 to refer Humphrey to one local job he sought, he has not pointed to any similarly situated younger, non-white or female worker who was treated better than he was. In addition, Local 101 says it did not refer him to local jobs because he had asked to be referred to jobs out of the local area, which it did.

As for his failure to be selected as craft safety steward, emergency response team member or foreman,[1] he has not pointed to any similarly situated individual outside of his protected categories that was treated better than he was. A better qualified white man of approximately the same age became craft safety steward, Humphrey does not say who was selected for the emergency response team, and other white men in their forties and fifties were selected to be foremen.

Finally, as for Humphrey's layoff and failure to be rehired by Bechtel, Humphrey has not shown Local 101 played any role in that decision or that any similarly situated individual outside his protected categories was treated better than he was. Furthermore, Bechtel has offered legitimate reasons for not wanting Humphrey to work there: it had received complaints about Humphrey sexually harassing a coworker, he did not get along with his coworkers, and it believed he clocked out

---

[1] The Court assumes for the purposes of this motion that Local 101 had input into the decisions about filling these positions even if Bechtel had the final authority to make the selection.

7

for a coworker.

More importantly, even if Humphrey could establish a *prima facie* case as to any of the foregoing, he cannot establish pretext.   There is simply no evidence from which a reasonable jury could conclude that any of Local 101's conduct was age, race or sex discrimination as opposed to mere dislike of Humphrey personally, which is not a violation of the ADEA or Title VII.

For the foregoing reasons, the Court will grant summary judgment for Local 101 on Humphrey's age, race and sex discrimination claims.

B.   Hostile Environment

Humphrey also asserts a hostile work environment.   To establish a *prima facie* case of harassment, a plaintiff must show that "(1) he was subjected to unwelcome harassment, (2) the harassment was based on his race[, sex or age], (3) the harassment was severe and pervasive enough to alter the conditions of his employment and create a hostile and abusive working environment, and (4) there is a basis for employer liability."   *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005) (racial harassment);   see *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007) (sexual harassment);   *Kriescher v. Fox Hills Golf Resort & Conference Ctr.*, 384 F.3d 912, 915 (7th Cir. 2004) (age harassment).

As discussed above, Humphrey has not pointed to evidence that any harassment he suffered was based on his age, race or sex.   Therefore, he cannot satisfy the second prong of the hostile environment test.   Local 101 is entitled to summary judgment on Humphrey's hostile work environment claim.

C.   Retaliation

Title VII prohibits retaliation for objecting to unlawful race or sex discrimination:   "It shall be an unlawful employment practice for . . . a labor organization to discriminate against any member thereof . . . because he has opposed any practice made an unlawful employment practice by this

8

subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The ADEA contains a similar prohibition on retaliation for objecting to unlawful age discrimination. *See* 29 U.S.C. § 623(d).

As with discrimination claims, a plaintiff may overcome summary judgment on a retaliation claim using the direct or indirect method. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010) (Title VII);   Under the direct method, the plaintiff must present evidence that (1) he engaged in a statutorily protected activity, (2) the defendant took an adverse action, and (3) there was a causal connection between the two. *Hobbs v. City of Chicago*, 573 F.3d 454, 463 (7th Cir. 2009); *Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1078-79 (8th Cir. 2005). The adverse action can be anything that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

Humphrey engaged in statutorily protected activity when he filed a charge with the EEOC and filed this lawsuit, but there is no evidence he engaged in any other protected activity. He further agrees that Local 101 took no action to retaliate after his charge and the prosecution of this lawsuit. Therefore, he cannot succeed under the direct method of proof.

The failure to identify an adverse action by Local 101 following his protected activity also dooms Humphrey's chances under the *McDonnell Douglas* burden-shifting method, outlined above in the discrimination context.

For these reasons, Local 101 is entitled to summary judgment on Humphrey's retaliation claim.

**IV.    Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** Local 101's motion to strike (Doc. 38);

- **STRIKES** Humphrey's motion (Doc. 34) seeking denial of Local 101's summary judgment motion but instead construes it as a response to Local 101's summary judgment motion;

9

- **GRANTS** Local 101's motion for summary judgment (Doc. 30); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   December 13, 2012**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
